IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:15-CV-601-FL

| NATIONWIDE MUTUAL INSURANCE | ) |
| COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) ORDER |
| THERESA WAHOME, also known as | ) |
| Theresa Tate; JONATHAN WAHOME; | ) |
| QUATERIA McGIRT; SHAWNTIA | ) |
| McARTHUR, Individually;[1] and | ) |
| SHALETIA McARTHUR, Individually, | ) |
| | ) |
| Defendants. | ) |
| | ) |

This matter is before the court on plaintiff's motion for judgement on the pleadings (DE 45), which the court has converted to motion for summary judgment as set forth herein. Additionally before the court is "cross complaint for declaratory judgment and motion for summary judgment" filed by defendants Quateria McGirt, Shawntia McArthur, and Shaletia McArthur, which the court has previously construed as motion for summary judgment (DE 52). The issues raised are ripe for ruling. For the reasons that follow, the court denies both motions for summary judgment.

**STATEMENT OF THE CASE**

This case arises out of an underlying personal injury action filed by defendants Quateria

---

[1] Defendant referenced as "S.M." in complaint has reached age of majority, as reflected in docket text using full name "Shawntia McArthur" and as confirmed by Quateria McGirt, Shawntia McArthur, and Shaletia McAurthur's allegations in their state court complaint. (See DE 1-2 at 1 ("The Plaintiff Shawntia McArthur was fifteen years old at the time of the incident alleged herein")). Defendant Shawntia McArthur thus appears individually, and not through Guardian Ad Litem, Shaletia McArthur, henceforth. Accordingly, the court refers throughout this order and henceforth to defendant Shawntia McArthur in her individual capacity. The clerk is DIRECTED to revise the docket text to conform to the caption of this order.

McGirt, Shawntia McArthur, and Shaletia McArthur ("McGirt defendants"), on February 5, 2015, in Durham County, North Carolina, Superior Court, Case No. 15-CVS-1981 ("underlying lawsuit"). There, McGirt defendants claim damages resulting from a traffic accident and allege that defendant Jonathan Wahome, a passenger in the car that allegedly caused that accident, encouraged the driver's negligence.

On November 16, 2015, plaintiff filed this action seeking a declaration that it is not obligated to satisfy any judgment entered against defendant Jonathan Wahome. In particular, plaintiff seeks a declaratory judgment that Nationwide personal auto policy 6132 J 685880 ("the Policy") issued to Theresa Wahome, defendant Jonathan Wahome's mother and also named defendant in this case, provides no liability coverage for the claims brought against her son. Attached to plaintiff's complaint is the Policy, complaint filed in the underlying lawsuit, and affidavits of defendants Jonathan Wahome and Theresa Wahome.

On February 9, 2016, McGirt defendants filed motion to dismiss, arguing the court should decline jurisdiction pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a), which the court denied on June 1, 2016, holding that "the state's interest in the contract interpretation issue before the court is not strong, nor are the federal and state case so entangled, as to merit granting defendants' motion." (DE 25 at 4).

On July 5, 2016, the court issued notice to plaintiff regarding its failure to serve defendants Jonathan and Theresa Wahome. Ultimately, the court extended plaintiff's time to serve Theresa Wahome to October 19, 2016, and time to serve Jonathan Wahome to April 24, 2017. Although service was effected on these defendants, to date, no appearance, answer, or other response has been made by them.

2

On July 3, 2017, the court entered order directing plaintiff to file status report, which report plaintiff filed July 17, 2017, informing the court that "it is anticipated that Plaintiff and the McGirt Defendants will submit competing dispositive motions, based on the pleadings and exhibits on file with the court, asking the court to resolve the conflict regarding application of the insurance contract to the facts of the underlying lawsuit." (DE 41 at 2).

Thereafter, the court entered case management order on November 2, 2017, setting deadline for discovery as April 1, 2018, and filing of dispositive motions as May 1, 2018.

On November 22, 2017, plaintiff filed the instant motion for judgment on the pleadings. McGirt defendants' response time elapsed December 13, 2017, with no response given.

On May 2, 2018, the McGirt defendants filed "First motion for leave to file cross complaint for DJ & motion for summary judgment." (DE 51). That same date McGirt defendants also filed the instant "Cross-complaint for declaratory judgment and motion for summary judgment," together with several exhibits including the Policy, excerpts from the depositions of defendant Jonathan Wahome and Bernell Phillips ("Phillip"), and various filings from the underlying lawsuit, including the complaint. (DE 52). Finally, on May 30, 2018, McGirt defendants filed amended motion for leave to file counterclaim. (DE 58).

Following Rule 16 telephonic status conference held on May 30, 2018, in which McGirt defendants agreed with the court that the intention of the parties was to file cross-dispositive motions, the court construed McGirt defendants' motions consistent with this representation and allowed McGirt defendants' motion for leave to file summary judgment but denied defendants' motion for leave to amend answer as untimely, (DE 51), construed McGirt defendants' filing as a motion for summary judgment, (DE 52), and denied McGirt defendants' amended motion for leave

3

to file counterclaim as moot given the court's previous rulings (DE 58), directing McGirt defendants to file memorandum in support of their motion for summary judgment by June 11, 2018.

The McGirt defendants so filed on June 11, 2018, filing also in support affidavit of Daniel Strandh ("Strandh"), police officer with the Durham police department, and full deposition of defendant Jonathan Wahome.

On June 29, 2018, plaintiff filed memorandum in opposition, relying in support on statement of material facts and the following: deposition of defendant Jonathan Wahome; affidavits of defendants Jonathan and Theresa Wahome; affidavit of Strandh; the Policy; and complaints filed in both the underlying lawsuit and the current action.

Thereafter, McGirt defendants submitted numerous filings in reply. In these filings, McGirt defendants rely on statement of material facts, and in these filings and previous filings defendants additionally rely on the following documents from the underlying lawsuit:

1) Request for admissions to defendant Wahome with proof of service of February 7, 2015;

2) Notice of hearing on the motion for entry of default and default judgment against defendant Wahome, filed on April 29, 2015, setting hearing for May 11, 2015;

3) Defendant Wahome's answer and first motion to dismiss, filed May 11, 2015;

4) Defendant Wahome's amended motion to dismiss, filed July 28, 2015; and

5) State court order denying defendant Wahome's motion to dismiss and motion for extension of time to respond to plaintiffs' request for admissions if responses deemed untimely, filed August 20, 2015.

**STATEMENT OF THE FACTS**

Except as otherwise noted, the undisputed facts are summarized as follows.

An automobile accident occurred on July 31, 2014, between a vehicle being operated by defendant McGirt and being occupied by defendant Shawntia McArthur ("the McGirt vehicle") and

4

a vehicle owned by Phillips ("the Phillips vehicle"), being operated by Richard Little ("Little"), and being occupied by Andrew Reid ("Reid") and defendant Jonathan Wahome. (DE 70 ¶ 1; see DE 76). Jonathan Wahome was a passenger in the back seat of the Little vehicle at the time of the accident. (DE 70 ¶ 2; see DE 76).

Little was speeding and collided with the McGirt vehicle, resulting in injuries to the McGirts. (DE 70 ¶ 3; see DE 76). Defendant Jonathan Wahome testified that after he left the scene of the crash, someone gave him a ride back to his mother's house, where he stayed the night. (DE 71-1 at 27-28). The McGirts filed the underlying lawsuit, a personal injury lawsuit, in Durham County Superior Court against Little, Phillips, Reid, Jonathan Wahome, and John Does 1-4 on February 5, 2015. (DE 70 ¶ 4; see DE 76).

Defendant Theresa Wahome is the mother of defendant Jonathan Wahome. (DE 70 ¶ 5; see DE 76). At the time of the accident, defendant Theresa Wahome was insured by the Policy. (DE 71-6 at 4; DE 70 ¶ 15; see DE 76). Defendant Jonathan Wahome is not and was not a named insured in the Policy, although he was listed as a driver. (DE 71-6 at 4; DE 70 ¶ 16; see DE 76).

The Policy provides that plaintiff Nationwide "will pay damages for bodily injury or property damage for which any insured becomes legally responsible because of an auto accident." (DE 71-6 at 26; DE 70 ¶ 6; see DE 76). As used in the Liability section of the Policy, "insured" means the named insured, the named insured's spouse, "or any family member for the ownership, maintenance or use of any auto or trailer." (DE 71-6 at 26; DE 70 ¶ 7; see DE 76). In the Policy, "family member" is defined to mean "a person related to you by blood, marriage or adoption who is a resident of your household." (DE 71-6 at 19; DE 70 ¶ 8; see DE 76).

At the time of the accident, defendant Theresa Wahome resided at 3 Sugar Maple Court,

5

Durham, North Carolina. (DE 70 ¶ 9; see DE 76). At the time of the accident, defendant Jonathan Wahome testified that his mailing address was 3 Sugar Maple Court, Durham, North Carolina, that he was at that address "on and off for most of the time," but that "for the last two or three years," he would not classify this address as his residence in that he was "staying with girls – other – other situations." (DE 71-1 at 8-9). More specifically, defendant Wahome testified that at the time of the accident, he was not staying at this address but that he was "staying with somebody else. That was just my mailing place and my place where I had my child – child custody situation" and that his address in January of 2015 was "Level 5110 on Old Chapel Hill Road." (Id. at 9; see also DE 71-4 at 1 ("I moved from that address in approximately August of 2013 and have not resided there since that time"); DE 71-5 at 1 ("I am the mother of [defendant Wahome] . . . [who] has not resided at this address since approximately August of 2013")).

On or about February 7, 2015, the plaintiffs in the underlying lawsuit served on defendant Jonathan Wahome via certified mail with the Summons and Complaint in the underlying lawsuit and request for admissions at 3 Sugar Maple Court, Durham, North Carolina. (DE 52-5 at 9; DE 70 ¶ 17; DE 76 ¶ 17).

Thereafter, the court in the underlying lawsuit set for hearing on May 11, 2015, motion for entry of default and default judgment against defendants, including defendant Jonathan Wahome. (DE 76-2). Defendant Jonathan Wahome, through counsel, filed on May 11, 2015 answer and first motion to dismiss, seeking dismissal of claims against him based on Rule 12(b)(2), 12 (b)(4), 12(b)(5), and 12(b)(6), (DE 76-1), and on July 28, 2015 amended motion to dismiss based on Rule 12(b)(6), (DE 77-1). On August 20, 2015, the court in the underlying lawsuit denied defendant Jonathan Wahome's motions to dismiss as well as his motion for extension of time to respond to

6

plaintiff's request for admissions if responses are deemed untimely. (DE 52-8).

Defendant Jonathan Wahome did not answer the request for admissions and was not allowed to answer the request after the deadline to respond had passed. (DE 70 ¶¶ 20-21; see DE 76). The "General Duties" provision in the Policy provides that a person seeking coverage thereunder must "[p]romptly send us copies of any notices or legal papers received in connection with the accident or loss," and "[c]ooperate with us in the investigation, settlement or defense of any claim or suit." (DE 71-6 at 39; DE 70 ¶ 24; see DE 76).

## DISCUSSION

A.  Determination of Proper Standard of Review

Plaintiff filed motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Rule 12(c) allows a party to move for judgment on the pleadings, "after the pleadings are closed – but early enough not to delay trial . . . ." Fed. R. Civ. P. 12(c). A Rule 12(c) motion is designed to dispose of cases when the material facts are not in dispute and the court can judge the case on its merits by considering the pleadings and any attachments to the pleadings and materials referenced, which are incorporated into the pleadings by Rule 10(c). See Fed.R.Civ.P. 10(c). In general, such motions are disfavored unless the movant clearly establishes that no material fact is disputed and that movant is entitled to judgment as a matter of law. See 5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure, § 1368 (Supp.2006).

Here, however, both parties have submitted materials in connection with McGirt defendants' later-filed motion for summary judgment, some of which contains information not referenced in the complaint, which the court cannot consider under the Rule 12(c) standard. See Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and

plaintiff's request for admissions if responses are deemed untimely. (DE 52-8).

Defendant Jonathan Wahome did not answer the request for admissions and was not allowed to answer the request after the deadline to respond had passed. (DE 70 ¶¶ 20-21; see DE 76). The "General Duties" provision in the Policy provides that a person seeking coverage thereunder must "[p]romptly send us copies of any notices or legal papers received in connection with the accident or loss," and "[c]ooperate with us in the investigation, settlement or defense of any claim or suit." (DE 71-6 at 39; DE 70 ¶ 24; see DE 76).

## DISCUSSION

A.  Determination of Proper Standard of Review

Plaintiff filed motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Rule 12(c) allows a party to move for judgment on the pleadings, "after the pleadings are closed – but early enough not to delay trial . . . ." Fed. R. Civ. P. 12(c). A Rule 12(c) motion is designed to dispose of cases when the material facts are not in dispute and the court can judge the case on its merits by considering the pleadings and any attachments to the pleadings and materials referenced, which are incorporated into the pleadings by Rule 10(c). See Fed.R.Civ.P. 10(c). In general, such motions are disfavored unless the movant clearly establishes that no material fact is disputed and that movant is entitled to judgment as a matter of law. See 5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure, § 1368 (Supp.2006).

Here, however, both parties have submitted materials in connection with McGirt defendants' later-filed motion for summary judgment, some of which contains information not referenced in the complaint, which the court cannot consider under the Rule 12(c) standard. See Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and

not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

Before a court can convert a motion for judgment on the pleadings to one for summary judgment, it must give the parties "a reasonable opportunity to present all the material that is pertinent to the motion." Fed.R.Civ.P. 12(d); see also Plante v. Shivar, 540 F.2d 1233, 1235 (4th Cir. 1976) ("We have held that the term 'reasonable opportunity' includes some indication by the court to all parties' that it is treating the 12(b)(6) motion as a motion for summary judgment, with the consequent right in the opposing party to file counter affidavits or to pursue reasonable discovery.") (citations omitted). Because both parties have submitted materials in connection with the McGirt defendants' motion for summary judgment, the court concludes both parties have been afforded a "reasonable opportunity" to present the relevant materials as required by Rule 12(d). Additionally, in plaintiff's opposition to defendants' motion for summary judgment, plaintiff requests the court "deny the McGirt Defendants' Motion for Summary Judgment and grant summary judgment in favor of Plaintiff," (DE 69 at 11), indicating that plaintiff intends to have its motion treated as one for summary judgment.

Based on the unusual and specific facts and procedure of this case, the court construes plaintiff's motion for judgment on the pleadings as a motion for summary judgment and thus addresses the parties' filings as cross-motions for summary judgment.

B.  Summary Judgment Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district

court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (internal quotation omitted). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party).

"[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily

9

be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489-90.

C. Analysis

The parties dispute whether plaintiff is required to provide coverage under the Policy. More specifically, the parties' instant motions concern two issues: 1) whether defendant Jonathan Wahome complied with the "general duties" required under the Policy and 2) whether defendant Jonathan Wahome is an "insured" under the Policy. The court will address each in turn below.

1. "General Duties" under the Policy

As stated above, the "General Duties" provision in the Policy provides that a person seeking coverage thereunder must "[p]romptly send us copies of any notices or legal papers received in connection with the accident or loss," and "[c]ooperate with us in the investigation, settlement or defense of any claim or suit." (DE 71-6 at 39).

Under North Carolina law, "unless the insured or his judgment creditor can show compliance with the [notice] requirement [in the policy], the insurer is relieved of liability." Davenport v. Travelers Indem. Co., 283 N.C. 234, 238 (1973). The North Carolina Supreme Court has articulated a three-part test to determine whether "an insurer may be relieved of its obligation to indemnify due to its insured's asserted failure to comply with a policy requirement that notice of loss be given to the insurer 'as soon as practicable.'" Metric/Kvaerner Fayetteville v. Fed. Ins. Co., 403 F.3d 188, 197–98 (4th Cir. 2005) (citing Great Am. Ins. Co. v. C.G. Tate Constr. Co., 303 N.C. 387, 279 (1981); Great Am. Ins. Co. v. C.G. Tate Constr. Co., 315 N.C. 714 (1986)). The test is as follows:

"(1) whether there was a delay in notifying the insurer of a covered loss (the 'Notice Element'); (2) if such notice was delayed, whether the insured acted in good faith with respect to the delay (the 'Good Faith Element'); and (3) if the insured acted in good faith, whether the insurer was nevertheless materially prejudiced by the delay (the 'Prejudice Element')." Id. Regarding the notice element, the Supreme Court of North Carolina has held that the question of "[h]ow much time must pass between the occurrence and notice before the period is determined to be a 'delay' is a question of law for the court." Great American, 315 N.C. at 719 n. 3. The court observed that, "unless the insurer's allegations that notice was not timely are patently groundless, this first part of the test is met by the fact that the insurer has introduced the issue to the court." Id. at 719.

The accident at issue occurred July 31, 2014. The underlying lawsuit was filed February 5, 2015. Thereafter, on or about February 7, 2015, the plaintiffs in the underlying lawsuit served on defendant Jonathan Wahome via certified mail with the Summons and Complaint and request for admissions at 3 Sugar Maple Court, Durham, North Carolina. (DE 52-5 at 9; DE 70 ¶ 17; DE 76 ¶ 17). Time to respond to request for admissions was no later than March 12, 2015.[2] Defendant Jonathan Wahome, through counsel that defendants allege was appointed by plaintiff Nationwide, filed answer and motion to dismiss on May 11, 2015, (DE 68-1 at 1; DE 76 at 5), although defendant Jonathan Wahome asserted in affidavit submitted to state court that as of May 28, 2015, he had not been "served with a copy of the summons, complaint, request for admissions, interrogatories or

---

[2] The request for admissions served February 7, 2015 state that "Plaintiff serve upon Defendant(s) the following Request for Admission to be responded to separately an fully in accordance with the Rules of Civil Procedure." (DE 52-5 at 1). North Carolina Rule of Civil Procedure 36 provides "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney," which as applicable in the present instance would be no later than March 12, 2015. See N.C. R. Civ. P. 6 ("Additional time after service by mail. - Whenever a party has the right to do some act or take some proceedings within a prescribed period after the service of a notice or other paper upon him and the notice or paper is served upon him by mail, three days shall be added to the prescribed period.").

request for production of documents." (DE 71-4 at 1-2).³

Plaintiff does not inform the court specifically when it received notice or how it received notice, only asserting it received notice of the underlying lawsuit at some point "after the deadline had passed" to respond for the request for admissions. (See DE 69 at 6; DE 46 at 3-4). Additionally, plaintiff provides no evidence in support of this assertion, referencing only plaintiff's complaint. (Compl. (DE 1) ¶ 25; see also DE 70 ¶¶ 18-19). McGirt defendants argue "[t]here is no evidence of a 'delay in reporting,'" and instead the evidence shows "Wahome, though counsel appointed by the carrier, filed an Answer on May 11, 2015, only three months after the Complaint was served" and on the day of the default judgment hearing, indicating "Wahome had reported the claim to Nationwide well before May 11, 2015." (DE 76 at 5).

The court finds a genuine issue of material fact as to when notice was provided to plaintiff regarding the underlying litigation. See Great Am., 303 N.C. at 392 ("The language relied on by the Court of Appeals merely amounts to a statement of when the question of timely notice becomes one of law properly decided by the court.") (citing First Citizens Bank & Tr. Co., Lincolnton v. Nw. Ins. Co., 44 N.C. App. 414, 421 (1980) ("Here, there is a dispute as to when defendant Melton notified appellant of the alleged theft. The corollary of the above rule established in Muncie is that when the facts are in dispute, as here, the question as to whether or not notice was given 'as soon as practicable' is for the jury.")); see also Muncie v. Travelers Ins. Co., 253 N.C. 74, 82–83 (1960) (J. Parker, concurring), overruled on other grounds by Great Am., 303 N.C. at 279 ("The insured has offered no excuse or extenuating circumstances for his delay in giving the insurer notice of the

---

³ As of the date of defendant Jonathan Wahome's deposition, August 31, 2015, defendant Jonathan Wahome testified he had reviewed but not answered "the set of documents that was sent by [plaintiffs' attorney] called Interrogatories, Request for Production of Documents." (DE 71-1 at 8).

12

accident . . . . What is a reasonable time, when the facts are not in dispute, as here, is a question of law to be decided by the Court.") (emphasis added).

Plaintiff could have received notice of the lawsuit and request for admissions after response to the request for admissions was due; however, plaintiff has failed to put forth any evidence in support of its position, and taking facts in light most favorable to defendants, the court finds there is a genuine issue of material fact regarding the timeline of when plaintiff received "notice[] or legal papers" regarding the underlying lawsuit, thus precluding grant of summary judgment on this issue as to either party.[4]

2.   "Insured" under the Policy

Turning to whether defendant Jonathan Wahome was an "insured" under the Policy, the parties' dispute centers on whether defendant Jonathan Wahome was a resident of defendant Theresa Wahome's household as defined by the Policy at the time of the accident.

The term resident, although commonly used, has "no precise, technical, and fixed meaning applicable to all cases." Jamestown Mut. Ins. Co. v. Nationwide Mut. Ins. Co., 266 N.C. 430, 435 (1966). The North Carolina Supreme Court in Jamestown has described the word "resident" in an insurance contract to be a "slippery word." Id. at 437. After surveying the various ways in which the term "resident" has been defined, the court focused on the following facts in holding that William Clark Hamrick was a resident of his father's home as defined by the insurance policy in question:

> William Clark Hamrick had no home of his own. He went back to his father's house,

---

[4] McGirt defendants additionally assert for the first time in their reply brief that because "Counsel for Jonathan Wahome and Nationwide argued Motions to Dismiss" in the underlying lawsuit, (see DE 68-1 at 1), "Plaintiff's denial of liability on other grounds . . . operates as a waiver of the notice requirements." (DE 76 at 9). Because plaintiff has had no opportunity to respond to this argument, the court declines to address it at this time.

> carrying with him all his possessions. His intent was to remain there until living quarters more convenient to his employment could be found and the necessary arrangements made for his occupancy of them. In the meantime, he lived in and used his father's house as he had done when a boy, sleeping there, taking his meals there, having the run of the house, and having his laundry included in the family laundry. For all of this he paid no board. We think it clear that under these circumstances he was 'a resident of the same household' as his father. He is not in the same position as an adult child having a home of his own to which he intends to return and making a mere visit to his parents. Nor is he in the position of a mere roomer or boarder. He was there because he was a member of the family and had no other home.

Id. at 439. As such, inquiry into whether a person is a resident for the purposes of an insurance policy is a fact-intensive inquiry.

Additionally, North Carolina "courts favor an interpretation in favor of coverage." Jamestown, 266 N.C. at 439; see also Grant v. Emmco Ins. Co., 295 N.C. 39, 43 (1978) ("[A] contract of insurance should be given that construction which a reasonable person in the position of the insured would have understood it to mean and, if the language used in the policy is reasonably susceptible of different constructions, it must be given the construction most favorable to the insured, since the company prepared the policy and chose the language."); N. Carolina Farm Bureau Mut. Ins. Co. v. Stox, 330 N.C. 697, 707 (1992) ("It is also well settled that when an insurance policy contains no ambiguity, it shall be construed according to its terms, but when ambiguity exists the policy shall be construed in favor of coverage and against the insurer who selected its language.").

Given that residency is a fact-intensive inquiry, that courts favor an interpretation of coverage, and that the court must view the facts on this issue in the light most favorable to defendants, the McGirt defendants have presented a genuine issue of fact on the issue of whether defendant Jonathan Wahome was a resident of defendant Theresa Wahome's home at the time of the accident.

In particular, it is undisputed that at the time of the accident, defendant Theresa Wahome was insured by the Policy, and defendant Jonathan Wahome is not and was not a named insured in the Policy, although he was listed as a driver.[5] (DE 71-6 at 4). Plaintiff has put forth the following deposition testimony as evidence that defendant Jonathan Wahome's address at the time of the accident was "Level 5110 on Old Chapel Hill Road," that he was not living in his mother's household at the time of the accident, and that he had not lived at the address for nearly a year before the accident occurred on July 31, 2014, having moved out around August 2013:

> Q  Okay. And how long have you lived on Sugar Maple?
> A.  At least two or three years.
> Q.  At least two or three years. And is that – and for that two or three years, has that constantly been your mailing address?
> A  Yes, sir.
> Q  And would you classify that as your residence, Sugar Maple, for the last two or three years?
> A  No, sir, probably for the last -- I'm going to say for the last eight months I've started being there on a daily basis. But in the past, no, sir, I was staying with girls – other – other situations.
> Q  Okay. So if we -- if this is August, if this is the eighth month of the year, beginning in January of 2015, you -- you think that –
> A  I was not there, no, sir. I was working, I was staying with somebody else. That was just my mailing place and my place where I had my child -- child custody situation.
> Q  Okay. All right. So where was your address in January of 2015?
> A  I was staying with a girl at Level 5110 on Old Chapel Hill Road.
> Q  Okay. And what is the person's name with whom you were residing?
> A  Deanna Davis . . .
> Q.  And what -- what is your relationship with Ms. Davis?
> A.  It was a girlfriend.
> Q  You say she was a girlfriend, how long was she your girlfriend?
> A  Two years.
> Q.  After -- after living with Ms. Davis, where did you live?
> A.  I started going back to my mom's house.
> Q.  At Sugar Maple?

---

[5] Defendants argue that although "identification of Wahome as a listed driver" on the policy at issue, "does not, in and of itself, establish coverage," it "provides more evidence that, regardless of various temporary living situations, Wahome's true legal residence, for purposes of coverage, was at 3 Maple Court." (DE 76 at 8).

15

  A. Yes.
  Q. Okay. But the entire time you expected to receive your mail at Sugar Maple?
  A Yes.

(DE 71-1 at 9-10; see also DE 71-4 at 1 ("I moved from that address in approximately August of 2013 and have not resided there since that time"); DE 71-5 at 1 ("I am the mother of [defendant Wahome] . . . [who] has not resided at this address since approximately August of 2013")).[6] This evidence precludes summary judgment in favor of defendants.

  Taking facts in light most favorable to defendants, however, there is a genuine dispute of material fact as to whether defendant Jonathan Wahome was a resident of his mother's home at the time of the accident. Defendant Jonathan Wahome testified that although at the time of the accident he was staying with his girlfriend, he was able to return to his mother's home at will, his mailing address for the entire time in question was his mother's home, and he used her home for child custody purposes. Id. Additionally, in the last eight months prior to the deposition, he had been staying at his mother's house "on a daily basis," contrasting that arrangement to the time of the accident where he was staying elsewhere. Id. However, defendant need not be at his mother's house on a daily basis in order to be found a "resident," and it is currently unknown, for example, how often defendant stayed with his mother notwithstanding his "staying with" Deanne Davis or whether defendant kept personal belongings at his mother's house.

  Additionally, on the day and night of the accident in question, defendant Jonathan Wahome testified that he was picked up from his mother's home and, following the accident, was returned

---

[6] Defendants appear to argue that defendant Jonathan Wahome indicated he was living with another person, Bernell Phillips ("Phillips"), at the time of the accident. (See DE 68 at 7). However, this is not what defendant Jonathan Wahome testified, as indicated above. Additionally, deposition testimony by Phillips offered by defendants does not support defendants' contention. (See DE 52-6 (Phillips testifying that defendant Jonathan Wahome lived in her home at some point before the accident)).

16

to his mother's home where he stayed the night and where his mother assisted in helping him get dressed the next morning. (See DE 71-1 at 27-28 ("I was on a 90-day probation period for that electrician job, so I knew I had to show up for work the next day, so I was like I'm going to try to go to work if I can, then I'll deal with it then. I went -- <u>I got home</u> . . . . I don't remember who, honestly, but somebody gave me a ride back to my mom's house.")) (emphasis added); Cf. Jamestown, 266 N.C. at 435 ("He is not in the same position as an adult child having a home of his own to which he intends to return and making a mere visit to his parents.").

This factual dispute is not appropriately addressed at the summary judgment stage, and cases cited by the parties in support do not hold otherwise. See N. Carolina Farm Bureau Mut. Ins. Co. v. Paschal, 231 N.C. App. 558, 568 (2014) (holding "in light of the very particular circumstances in this case, that Harley was a resident of Thurman's household as defined under the policy at the time of the accident," focusing on the following factors among many others: "Thurman had a key to the Branson house, and freely entered it whenever he desired . . . . . Thurman spent much of his time at the Brush Creek house, and had most of his mail, including important documents, delivered to that address . . . . . Though Thurman apparently did not spend many nights at the Branson house, he did see Harley most every day of the week, and he was a regular participant in Harley's life."); Davis by Davis v. Maryland Cas. Co., 76 N.C. App. 102, 106 (1985) (holding minor child was a resident of two homes); Bruton v. N. Carolina Farm Bureau Mut. Ins. Co., 127 N.C. App. 496, 498 (1997) ("The undisputed facts show that plaintiff spent the majority of his time with his girlfriend in his mobile home in Faison; prior to the accident he purchased a health insurance policy for which he listed his Faison address; he listed his Faison address for a bank account; his utility bills were incurred at and mailed to his Faison address; his Faison address was given for all tax matters; and

17

his Faison address was also listed as his "residence" with the United States Post Office.").

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings, construed as motion for summary judgment, (DE 45) is DENIED. McGirt defendants' "cross complaint for declaratory judgment and motion for summary judgment," construed as motion for summary judgment, (DE 52) is DENIED. The parties are DIRECTED to confer and file within **21 days** from date of entry of this order a joint status report specifying the estimated length of the trial, three alternative suggested trial dates, and suggested alternative dispute resolution techniques to be employed prior to trial in attempt to resolve the issues between the parties. Upon receipt of the parties' report, the court will enter such further order as is warranted regarding pretrial and trial scheduling.

SO ORDERED, this the  28th day of September, 2018.

LOUISE W. FLANAGAN
United States District Judge